IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN AUSEC, et al., <br>     Plaintiffs, <br><br> vs. <br><br> HUMINSKA'S ANIOLY, INC., et al., <br>     Defendants. | Civil Action No. 11-198 |

MEMORANDUM OPINION AND ORDER

Plaintiffs, John and Angela Ausec, Patricia Descarage, and Irene and Joseph Trzybinski, bring this action against Defendants, Huminska's Anioly, Inc. ("HA") and its principal, Mary M. Huminski, alleging claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (RICO), and state law arising out of Defendants' providing adoption services to enable Plaintiffs to adopt children from Poland. Specifically, Plaintiffs allege that Defendants made false representations about the children's health and physical condition and raise claims under Pennsylvania law of wrongful adoption, fraudulent misrepresentation, innocent misrepresentation, intentional infliction of emotional distress (IIED), tortious interference with contract expectancies and negligence, in addition to their two RICO claims.

Currently pending before the Court is a motion for summary judgment, filed by Defendants. Plaintiff has filed a brief in opposition and Defendant has filed a reply brief. For the reasons that follow, the motion will be granted with respect to Counts I, II, V, VI, VII, VIII and IX, and denied with respect to Counts III and IV. In addition, Defendant Huminska's Anioly, Inc. will be dismissed without prejudice.

Facts

Plaintiffs are United States citizens who contacted HA, a Pennsylvania corporation that operated as an international adoption agency that specialized in adoptions from Poland, for

assistance in adopting children. (Am. Compl. ¶¶ 1-3, 18.)[1] They allege that Huminski, on behalf of HA, misrepresented—or at least failed to diligently investigate—the health conditions of children she wanted them to adopt and that they later learned that the children had severe disabilities and health problems which Huminski had concealed from them. (Am. Compl. ¶¶ 31-32.)

The Ausecs

The Ausecs indicate that they contracted with HA to adopt a Polish child on July 19, 2004, but that they stated (and their home study made it clear) that they could care for only one or two girls with minor correctible health issues. (Am. Compl. ¶¶ 34-38.) In August 2007, they received a referral for a child ("M"), but when they saw that an EEG had been ordered for M, they questioned Huminski, who contended that the EEG was "standard testing in Poland." She also asserted that, if the doctors in Poland had found any problems with M, they would have noted it in her records. Based upon these assertions, the Ausecs agreed to travel to Poland in November 2007 and again in January 2008 to meet M. Once in Poland, the Ausecs were required by Huminski to use the services of Jozef Jurga, HA's Polish attorney, for translation, travel and legal services. The Ausecs state that Jurga claimed to represent them and to be looking out for their best interests, but that he was in fact an agent of Huminski. (Am. Compl. ¶¶ 43-59.)

The Ausecs expressed concerns to Jurga about M, who was 26 months old but moved abnormally when walking or running and was unable to walk up or down stairs. Jurga asserted that the problem was "environmental" and that in a better environment M would outgrow these problems. They also allege that Jurga refused their requests to see other children in the

---

[1] ECF No. 26.

orphanage and that, at the time they were visiting, Jurga actually had M's medical file in his possession but did not let them see it. The medical file revealed that M had been diagnosed with mental retardation and had been hospitalized on more than one occasion with neurological disorders. M would later be diagnosed by a United States doctor with cerebral palsy. Indeed, the Ausecs took M to the University of Michigan and the Cleveland Clinic, and neurologists at both institutions concluded that M had basic signs of cerebral palsy since birth and that, if she had been treated by Polish doctors, it would have been diagnosed. When the Ausecs informed HA of these problems, Huminski responded in an email message dated October 31, 2008 that it was their fault for "failing to get to know M" while in Poland. They paid $46,396 in fees related to this wrongful adoption. (Am. Compl. ¶¶ 62-94.)

The Trzybinskis

Like the Ausecs, the Trzybinskis informed HA that they were interested in adopting up to two children, but that they could not adequately care for special needs children. (Am. Compl. ¶¶ 95-98.) They allege that, over a period of seven months in 2007, HA tried repeatedly to stray from their requirements and referred a variety of children who had special medical and emotional needs that placed them outside their approved criteria. The Trzybinskis paid a total of $2,700 in adoption fees to Huminski herself, in addition to other money spent on dossiers completion, translation, etc. (Am. Compl. ¶¶ 101-04.)

In October 2007, Huminski referred the Trzybinskis two children, PN and PK. The Trzybinskis expressed concern that they would not be able to care for the children if they came from an unstable background that resulted in psychological and emotional effects, and Huminski responded that most native Poles want very young children and that is why older ones, such as PK and PN, are passed over, thereby implying that they had no health or emotional issues. (Am.

Compl. ¶¶ 105-08.)

They allege that Huminski pressed them to adopt PK and PN and sent them medical records, but some of the records were still in Polish and Huminski asserted that they had been developing normally so they did not need any additional psychological testing. On November 11, 2007, the Trzybinskis emailed Huminski a cautious "wish to adopt PK and PN," but reserved the right to withdraw if her statements proved to be false. They also told Huminski not to advise the children that they would be adopting them. Jurga and his wife Ania (who acted as a translator) confirmed that the Trzybinskis would be introduced as "Aunt and Uncle." On November 20, 2007, Huminski sent them two petitions for adoption, a power of attorney naming Jurga and an invoice for $6,000 payable to Jurga. (Am. Compl. ¶¶ 111-22.)

After considerable delay, Huminski finally came through with the travel dates on February 4, 2008, and on March 5, 2008, the Trzybinskis traveled to Poland, despite the fact that Joe Trzybinski was feeling "terribly sick." The Trzybinskis met with PK and PN for the first time on March 9, 2008, and saw that the children demonstrated significant behavioral problems which were indicative of developmental disorders and exposure to abusive environments. In addition and contrary to Huminski's representations, they learned that PN had been abused, which became clear during a judge's questioning of the children's foster parent in open court. (Am. Compl. ¶¶ 130-46.)

The Trzybinskis expressed their concerns to Huminski, but she discouraged them from contacting friends, family and other professionals and she also pressured them to conclude the adoption. When the Trzybinskis informed Huminski about Joe's health, she sent a Polish doctor to see him, but the doctor merely gave him a prescription for antibiotics for a "sinus infection." The Trzybinskis also learned that the children had been told that the Trzybinskis would adopt

them, contrary to their instructions. (Am. Compl. ¶¶ 148-61.)

On March 17, 2008, the Trzybinskis told Jurga categorically that they would not adopt the children and Jurga threatened them with being charged with "child abandonment" and an HA employee told them that if they did not attend a court hearing to withdraw their petition to adopt, they would be arrested at the airport. On March 19, 2008, the Trzybinskis left Poland but, contrary to Huminski's and Jurga's threats, they were not arrested at the airport. As soon as the Trzybinskis returned to the United States, Joe was examined and found to have pneumonia and extreme dehydration, and the doctor noted that he should have been treated in Poland. (Am. Compl. ¶¶ 165-84.)

After they left, Polish psychologist Barbara Lapinska drafted a report on March 19, 2008 blaming the Trzybinskis for the failed adoption and deeming them unfit to adopt any child because of their "selfish" decision not to adopt. The report was communicated to the Polish Central Authority, thereby precluding them for adopting any children from Poland. They spent $25,000-$28,000 for an adoption which never occurred and Huminski refused to return the adoption fees. (Am. Compl. ¶¶ 186-98.)

Patricia Descarage

In 2005, Descarage and her husband adopted two children from Poland through HA. Huminski had them investigated afterward based upon unsupported allegations. On May 1, 2006, a report finally stated that the allegations against them were unsubstantiated. (Am. Compl. ¶¶ 354-58.)

According to Poland's adoption rules, siblings of children adopted in foreign adoptions should have all attempts made to have them placed with their adopted siblings. In 2008, Descarage became aware through discussions with orphanage personnel that her children's

5

siblings were becoming available for adoption, and HA was aware of this information. But she alleges that Huminski surreptitiously arranged to separate the children, falsified documents and arranged to have the children adopted by another family. Descarage alleges that Huminski was retaliating against her for Descarage having spoken out about HA's attempts to sabotage her original adoptions. Descarage indicates that she spent thousands of dollars in attempts to adopt the siblings and to correct HA's actions.[2] (Am. Compl. ¶¶ 359-68.)

Procedural History

Plaintiff originally filed this action in the United States District Court for the Eastern District of Pennsylvania on November 5, 2010. (ECF No. 1.) On February 10, 2011, an order was entered transferring the action to this Court (ECF No. 9) and the case was opened in this Court on February 14, 2011 (ECF No. 10).

On May 6, 2011, Plaintiffs filed a First Amended Complaint (ECF No. 26). Count I alleges a claim of wrongful adoption on behalf of the Ausecs. Count II alleges a claim of fraudulent misrepresentation on behalf of the Ausecs and Trzybinskis. Count III alleges claims under RICO section 1962(c) on behalf of the Ausecs and Trzybinskis, and Count IV alleges claims under RICO section 1962(d). Count V alleges a claim of innocent misrepresentation on behalf of the Ausecs and Trzybinskis. Count VI alleges a claim of IIED on behalf of all Plaintiffs. Count VII alleges a claim of tortious interference with contractual expectancies on behalf of all Plaintiffs, and Count VIII alleges another such claim on behalf of Descarage. Finally, Count IX alleges a claim of negligence on behalf of all Plaintiffs.[3]

---

[2] At the time the original and Amended Complaints were filed, there were two additional plaintiffs, Joseph and Sue Busowski. However, on January 22, 2016, Plaintiffs filed a praecipe to settle and discontinue the claims brought by these plaintiffs (ECF No. 75) and they were dismissed from the case. Therefore, the allegations of the Busowskis are not recited herein.

[3] On February 29, 2012, all parties submitted consents to proceed before a magistrate judge

On October 31, 2012, a suggestion of bankruptcy was filed as to Huminski based upon her filing of a petition of bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia on October 30, 2012 (ECF No. 65), and as a result, this case was stayed and statistically closed at that time (ECF No. 66). On June 24, 2013, another suggestion of bankruptcy was filed, this one as to HA (ECF No. 67), based upon HA's June 21, 2013 filing of a petition of bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, and the administrative closure in this case was continued (ECF No. 68).

Defendants indicate that, on April 9, 2014, the Georgia bankruptcy court entered an order as to HA, approving the trustee's report of no distribution, discharging the trustee and closing the estate. On September 16, 2014, Huminski filed another bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia, which was docketed at No. 14-68152.

On December 22, 2014, Plaintiffs filed a Complaint Objecting to Dischargeability of Indebtedness in the Georgia bankruptcy court, naming Huminski as the sole defendant, which was docketed in that court at No. 14-5463 (the "Adversary Action") (Defs.' App. (ECF No. 87), App. 1-4.) In the Adversary Action, Plaintiffs stated that they "are **not** pursuing Huminska's Anioly, Inc. despite the fact that a corporation cannot get a Chapter 7 discharge but rather that it has been determined to the Plaintiffs' counsel's satisfaction that this entity has no assets." (Id. App. 2 ¶ 5.) The Adversary Action contains two causes of action alleging non-dischargeability of debts by Huminski: 1) obtaining adoption fees by false pretenses and/or actual fraud, 11 U.S.C. § 523(a)(2)(A); and 2) obtaining adoption fees through fraud or defalcation while acting in a fiduciary capacity, 11 U.S.C. § 523(a)(4). (Id. App. 2-3 ¶¶ 6-11.)

On July 24, 2015, Plaintiffs filed a motion to lift the stay in this case for the limited

---

under 28 U.S.C. § 636(c)(1) and on March 2, 2012, an order was entered granting the consent and the undersigned became the presiding judge on the case.

purpose of settlement discussions (ECF No. 73), which was granted on July 27, 2015 (ECF No. 74). However, the case did not settle.

Defendants state that:

> On August 8, 2015, following [a] pretrial conference, the Hon. Ray Mullins for the Bankruptcy Court for the Northern District of Georgia held the Adversary Action in the Georgia Bankruptcy Court in abeyance and directed the parties to litigate the dischargeability claims in the Western District of Pennsylvania within the framework of this civil action. (Adversary Action; PACER Case No. 14-5463; ECF #15.)

(ECF No. 85 at 2 ¶ 5.) Plaintiffs dispute that this Court is to determine the dischargeability of the debt. Rather, they contend that the issue presented is the validity and enforceability of the debt and that, if this Court finds the debt valid and enforceable, it is for the Georgia bankruptcy court to make the determination of whether the debt is dischargeable. (ECF No. 92 at 3-4.)

The Court must note that, technically, the only order on the record entered by the bankruptcy court was dated August 26, 2015 and stated that:

> For the reasons stated on the record,
>
> **IT IS ORDERED** that the above-styled adversary proceeding be and is hereby **HELD IN ABEYANCE** until further order of the Court.

(ECF No. 76 Ex. A.) Nevertheless, the parties are in agreement that the matter is now in this Court for resolution of at least some issues. Indeed, Plaintiffs attached this order to their June 8, 2016 motion to reopen the case (ECF No. 76). At a status conference held on August 17, 2016, Plaintiffs reported that they attempted to obtain clarification from the Georgia bankruptcy court, but were unable to do so. Therefore, the Court reopened the case and scheduled deadlines for Defendants to file a motion for summary judgment.

On December 7, 2016, Defendants filed a motion for summary judgment (ECF No. 84).[4]

---

[4] Although Defendants have not expressly indicated it, their motion seeks only partial summary

8

On January 5, 2017, Plaintiffs filed a brief in opposition (ECF No. 92) and on January 23, 2017, Defendants filed a reply brief (ECF No. 93).

Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Defendant argues that: 1) Plaintiffs have abandoned all claims against HA by admitting

---

judgment: it does not challenge Plaintiffs' Adversary Action claim under § 523(a)(2)(A) or their RICO claims in Counts III-IV herein. Furthermore, the proposed order submitted (ECF No. 84-2) is blank.

9

in the Adversary Action that HA has no assets and the bankruptcy court stayed the action and directed the parties to litigate their claims in this Court but only as to Huminski as the sole defendant; 2) Plaintiffs allege in the Adversary Action that Huminski obtained adoption fees through fraud or defalcation while acting in a fiduciary capacity, which would except such funds from discharge pursuant to 11 U.S.C. § 523(a)(4), but the term "fiduciary" is narrowly construed to refer to "technical trusts" and Plaintiffs have no evidence that Huminski established a technical trust, nor do they have evidence that she committed a defalcation (failure to produce funds entrusted to a fiduciary); and 3) all of the state law claims are subject to a two-year statute of limitations, but the evidence demonstrates that Plaintiffs were aware of their causes of action more than two years before suit was filed on November 5, 2010.

Plaintiffs respond that: 1) they did not abandon their claims against HA in the bankruptcy proceedings, although they admit that it has no assets and request that it be dismissed without prejudice; 2) Huminski's arrangements with them can be viewed as creating technical trusts—she agreed to act in their best interest and as their representative in exchange for fees (the res) but made false statements as to the children's condition thereby violating her fiduciary responsibilities and they suffered economic losses as a result, and in addition, they allege that the debt is also non-dischargeable pursuant to § 523(a)(2); and 3) the RICO statute of limitations is four years, and therefore their RICO claims are timely, and applying the discovery rule to their state law claims, genuine issues of material fact preclude the determination that they necessarily knew prior to November 5, 2010 that Huminksi's false statements to them were made intentionally.

In a reply brief, Defendants argue that: 1) HA should be dismissed with prejudice; 2) Plaintiffs ask the Court to imply the existence of a technical trust, but the fiduciary relationship

required by § 523(a)(4) is not one that may be implied; and 3) the burden is on the Plaintiffs to demonstrate that the discovery rule applies to their state law claims, but they have failed to meet it and the undisputed facts demonstrate that they were aware of the basis for their claims more than two years before filing suit.

Dismissal of HA

Defendants move for the dismissal of HA, contending that Plaintiffs have abandoned their claims against this entity. Plaintiff do not agree that they abandoned their claims, but they concede that HA has no assets and they agree to its dismissal without prejudice.[5] Therefore, the motion to dismiss HA as a defendant will be granted and it will be dismissed without prejudice.

Bankruptcy Debt Exceptions

Pursuant to the United States Bankruptcy Code:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

…

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

…

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(2, 4).

Defendants cite cases holding that the exception under § 523(a)(4) applies only to

---

[5] In their reply brief, Defendants state that Plaintiffs misunderstand their argument, which is that Plaintiffs abandoned HA as a defendant in the Adversary Action, "which this Court is now adjudicating." (ECF No. 93 at 2.) As explained below, this Court is not adjudicating the claims or defenses in the Adversary Action.

"fiduciaries," that the term "fiduciary" is narrowly construed to refer to "technical trusts," that Plaintiffs cite no basis to conclude that Huminski acted as a fiduciary or created a technical trust, and that a "defalcation" is a "failure to produce funds entrusted to a fiduciary," of which Plaintiffs also have no evidence. They argue that Plaintiffs attempt to imply the existence of a technical trust from the circumstances, but that the law does not countenance such implications.

However, the cases they cite are all from bankruptcy courts or appeals therefrom. See, e.g., Eavenson v. Ramey (In re Eavanson), 243 B.R. 160, 164 (N.D. Ga. 1999); Quaif v. Johnson, 4 F.3d 950, 953-55 (11th Cir. 1993); Lewis v. Lowery (In re Lowery), 440 B.R. 914, 926 (Bankr. N.D. Ga. 2010). This Court is not a bankruptcy court, nor did the case arrive in this Court as an appeal from a bankruptcy court decision. Rather, as stated above, Plaintiffs allege claims under RICO and Pennsylvania state law against Defendants for alleged misrepresentations regarding the medical condition of children they wished to adopt from Poland. Even if Defendants could point to the existence of an order from the bankruptcy court that referred the dischargeability question to this Court (and they have not done so), there is no authority for a district court to answer such a question in the first instance.

In addition, the "claim" referred to by Defendants—the "second cause of action in the Adversary Action"—is simply not before this Court. This Court can adjudicate the merits of Plaintiffs' claims as asserted in this case. If Plaintiffs are successful, they will be entitled to a judgment in their favor. Such a determination would create a valid and enforceable debt owed by Huminski. But the subsequent determination as to whether that debt is dischargeable or not must be resolved by the bankruptcy court in Georgia. Defendants' argument is rejected.

Statutes of Limitations

All of Plaintiffs' state law claims are in the nature of torts, which means they are

governed by Pennsylvania's two-year statute of limitations, 42 Pa. C.S. §§ 5524(2, 7). See Korel v. Mixon, 2013 WL 11253542, at *3 (Pa. Super. Oct. 4, 2013) (tortious interference with contractual relationship); Bougher v. University of Pittsburgh, 882 F.2d 74 (3d Cir. 1989) (intentional infliction of emotional distress); Montanya v. McGonegal, 757 A.2d 947, 950 (Pa. Super. 2000) (negligence); Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 144-45 (3d Cir. 1997) (fraud).

Plaintiffs contend that, pursuant to the discovery rule, the statute of limitations is tolled until they learned both that the information given to them by Huminski was false and that she intentionally lied about it. However, they cite no authority in support of this two-tiered system. Moreover, even if it applied, their non-intentional claims (innocent misrepresentation and negligence) would have accrued when they learned that Huminski's statements were false.

"The discovery rule tolls the statute of limitations when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of the injury and its cause." Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991). Even when the discovery rule is applied, however, "aggrieved parties must still bring their claim within two years of when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." Beauty Time, 118 F.3d at 148 (footnote omitted). "The party relying on the discovery rule bears the burden of proof." Wilson v. El-Daief, 964 A.2d 354, 362 (Pa. 2009) (citation omitted).

Huminski has proffered evidence that: 1) on July 14, 2008, the Ausecs informed her that M had been diagnosed with cerebral palsy and on October 16, 2008, they informed her that this diagnosis had been confirmed by a second neurologist and that both agreed that the diagnosis should have been made in Poland shortly after M's birth, thus the Ausecs advised her that they had contacted the Pennsylvania Office of Children, Youth and Families, demanded that

13

Huminski rescind the adoption and refund their fees and threatened litigation if she did not (Huminski Aff. ¶¶ 15-16[6] & App. 114-16); 2) on July 30, 2008, the Trzybinskis filed a complaint with the Pennsylvania Bureau of Consumer Protection (which forwarded it to Department of Public Welfare), in which they complained of disrupted adoption, lack of information about the children, mishandling and poor treatment they received while in Poland, and Huminski's refusal to return their fees, and on October 1, 2008, their prior counsel sent a letter to Huminski seeking a refund of the fees they had paid her (Huminski Aff. ¶¶ 27-28 & App. 122-25; and 3) on September 21 and 27, 2008, Descarage posted internet complaints about Huminski's practices and on October 9, 2008, she filed a complaint with the Pennsylvania Better Business Bureau about Huminski's practices (Huminski Aff. ¶¶ 20-23 & App. 117-20).

Plaintiffs do not dispute these sequences of events, nor have they proffered any evidence to contest what Defendants have submitted. They contend that Huminski relies solely upon her own affidavit to prove that their claims are untimely, but this is not accurate: she has cited and produced letters, emails and internet postings from the Plaintiffs themselves and they do not deny their accuracy or authenticity.[7] They have not met their burden of demonstrating that their claims are timely pursuant to the discovery rule.

Given that Plaintiffs had enough information prior to November 5, 2008 to complain to several state agencies and to Huminski herself about her practices and to threaten her with litigation, their failure to file suit prior to November 5, 2010 leads inextricably to the conclusion that their state law tort claims are untimely. Therefore, with respect to Counts I, II, V, VI VII, VIII and IX, the motion for summary judgment will be granted.

---

[6] ECF No. 87 App. 126-30.
[7] The documents are not submitted for the truth of the matters asserted therein, but only to establish when Plaintiffs became aware of certain events.

On the other hand, the statute of limitations for civil RICO claims is four years. <u>Rotella v. Wood</u>, 528 U.S. 549, 553 (2000). Defendants have not argued that Plaintiffs' RICO claims are untimely and, even if they had done so, there is no basis in the record to conclude that Plaintiffs had sufficient information prior to November 5, 2006 to bring suit within four years of that date. Indeed, all of the actions described in the Amended Complaint occurred in 2007 and thereafter. In their reply brief, Defendants expressly deny that their statute of limitations argument applies to the RICO claims. (ECF No. 93 at 10.) However, they have not clarified that they are not seeking summary judgment as to Counts III and IV. Therefore, to the extent that Defendants move for summary judgment with respect to Counts III and IV, the motion for summary judgment will be denied.

In conclusion, Defendants' motion for summary judgment will be granted with respect to Counts I-II and V-IX and denied with respect to Counts III-IV, and HA will be dismissed as a defendant without prejudice.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN AUSEC, et al., )<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>HUMINSKA'S ANIOLY, INC., et al., )<br>    Defendants. ) | Civil Action No. 11-198 |

ORDER

AND NOW, this 25th day of January, 2017, for reasons explained in the accompanying memorandum,

IT IS HEREBY ORDERED that the motion for summary judgment filed on behalf of the Defendant (ECF No. 84) is granted with respect to Counts I, II, V, VI, VII, VIII and IX, and denied with respect to Counts III and IV.

IT IS FURTHER ORDERED that Defendant Huminska's Anioly, Inc. is dismissed without prejudice.

                                               s/Robert C. Mitchell_____
                                               ROBERT C. MITCHELL
                                               United States Magistrate Judge